## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## (TYLER DIVISION)

| | |
|---|---|
| **MORGAN & COWAN, LLC**<br>　　　　**Relator**<br><br>**vs.**<br><br>**PROGRESSIVE INTERNATIONAL**<br>**CORPORATION**<br><br>**and**<br><br>**BIG LOTS, INC.**<br><br>**and**<br><br>**UNION LUCKY INDUSTRIAL LIMITED**<br>　　　　**Defendants** | Case No.: 6:11-cv-00158<br><br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT FOR FALSE PATENT MARKING Relator

Morgan & Cowan, LLC ("Relator") alleges as follows:

### NATURE OF THE CASE

1.      This is an action for false patent marking under section 292 of the Patent Act (35 U.S.C. §292), which provides that any person may sue to recover the civil penalty for false patent marking. Relator brings this qui tam action on behalf of the United States of America.

### PARTIES

2.      Relator is a Texas limited liability company with its principal place of business at 2012 Anthony Drive, Tyler, Texas 75701.

3.      Defendant Progressive International Corporation ("Progressive") is a corporation organized under the laws of the State of Delaware with a principal place of business at 6111 S

228th St., Kent, Washington 98032, and may be served through its registered agent, Corporation Service Company, 300 Deschutes Way SW Suite 304, Wilmington, Delaware 19801.  Defendant is a wholly owned subsidiary of the Progressive Corporation whose principle place of business in in Cuyahoga Country, Ohio.

4.      Defendant Big Lots, Inc. ("Big Lots") is a corporation organized under the laws of the State of Massachusetts, having its principal place of business at 300 Phillipi Road, Columbus, OH 43228, and may be served with process through its registered agent, CSC-Lawyers Incorporating Service (Corporation Service Company), 50 W. Broad St. Suite 1800 Columbus, OH 43215.

5.      Defendant Union Lucky Industrial Limited ("Union Lucky") is a Chinese company organized under the laws of the People's Republic of China, having its principal place of business at Block B, 2/F, Chuan Yuan Factory Building, 342-344 Kwun Tong Road, Kowloon, Hong Kong.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Relator's false marking claims under Title 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Defendants by virtue of, *inter alia,* Defendants' persistent and continuous contacts with the Eastern District of Texas, including active and regular conduct of business during the relevant time period through their sales in the Eastern District of Texas.

7.      This Court has personal jurisdiction over Defendants because, *inter alia,* Defendants have violated Title 35 U.S.C. § 292, and falsely marked, advertised, distributed and sold products in the Eastern District of Texas. Further, on information and belief, Defendants have sold falsely

marked products in competition with sellers of competitive products in the Eastern District of Texas. Such sales by Defendants are substantial, continuous and systematic.

8.        Venue is proper in this District under Title 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

## FACTS

9.        Progressive advertises and sells a can opener product called the I-Can Opener™ through retail, catalog, and internet sales throughout the United States of America, including the Eastern District of Texas.

10.        Defendants have marked and continue to mark the I-Can™ Opener product (the "Falsely Marked Product") with expired or otherwise inapplicable patent markings, including the following false markings:  U.S. Patent No. 6,058,813 (the "'813 Patent"), World Wide Patent UK 2,334,939 (the "'939 Patent Marking"), and Patent UK 2,341,378 (the "'378 Patent Marking"), (collectively the "Patent Markings").

11.        Such false marking by Defendants includes marking the Patent Markings upon, affixing the Patent Markings to, and/or using the Patent Markings in advertising in connection with the Falsely Marked Products.

11.        The '813 Patent is titled "Locknut Wrench." Paul Bryant and Barry Douglas Luthanen were the original inventors and assignees of the '813 Patent.  The '813 Patent is inapplicable to and does not claims the Falsely Marked Product.

12.        The '813 Patent issued on May 9, 2000 and expired on May 10, 2004 due to failure to pay the maintenance fee due on May 9, 2004.  Nevertheless, Defendants have marked the Falsely Marked Products with the '813 Patent after May 10, 2004.

13.        The '939 Patent Marking and the '378 Patent Marking are unidentifiable as to jurisdiction because the two letter patent designation "UK" is not utilized by any nation's patent office and is

not assigned under the Patent Cooperation Treaty or any other patent treaty.

14.     The '939 Patent Marking and the '378 Patent Marking appear on a tag hung about the Falsely Marked Product and are molded into Falsely Marked 's Products handle.

15.     The '939 Patent Marking is identified by the Defendants as a "World Wide Patent" on the tag hung about the Falsely Marked Product.

16.     There are no patents which grant patent rights "World Wide."

17.     Defendants Progressive and Union Lucky are both assignees of US patents and were aware that there are no "World Wide" patents at the time the product was marked.

18.     Defendants Progressive and Union Lucky are both assignees of extraterritorial patent rights and, upon information and belief, are aware that the two letter country designation "UK" is not used by any nation.

19.     Upon information and belief, Progressive authored content of the tags, authorized the printing of the tags, reviewed their content prior to use, and caused the tags to be hung about the Falsely Marked Product.

20.     Upon information and belief, Progressive reviewed the product and its tags before accepting product from its Chinese manufacturer and has hung tags containing false markings onto the Falsely Marked Product with knowledge that the patent markings were false.

21.     Upon information and belief, Union Lucky Industrial Limited reviewed the tags content, printed the tags or caused them to be printed, and hung the tags on the Falsely Marked Product with knowledge that the patent markings were false.

22.     Upon information and belief, Union Lucky Industrial Limited was responsible for the creation of the molds used in the manufacture of the product, authorized the incorporation of the false markings into the mold, manufactured the product, and reviewed the product and its

markings after manufacture before having the Falsely Marked Product exported to the United States of America with knowledge that the patent markings were false.

23.     Upon information and belief, Big Lots reviewed the product and its tags before placing it on its shelves and was aware of the false markings prior to stocking the Falsely Marked Product.

24.     Upon information and belief, Big Lots has advertised the product with the false markings and hung tags containing false markings on the Falsely Marked Product.

25.     Defendants have falsely marked the Falsely Marked Product with the '813 Patent after its expiration date.  For example, Defendants marked the Falsely Marked Product with the '813 Patent by placing the '813 Patent's US patent number on a tag and hanging that tag about the Falsely Marked Product.

26.     The '813 Patent, which expired in 2004, was marked on the tag hung on the Falsely Marked Product and was printed with a 2006 copyright notice.

27.     Defendants have falsely marked the Falsely Marked Product on the tag and on the handle with two alphanumeric sequences which resemble extraterritorial patent numbers and which are identified on the tag as patents.

28.     Defendants have falsely marked the Falsely Marked Product with at least one alphanumeric sequence which resembles an extraterritorial patent number preceded by the words "World Wide Patent." For example, Defendants placed the "World Wide Patent" in front of an alphanumeric sequence on the Falsely Marked Product by listing it on a tag affixed to the product.

29.     The false Patent Markings could have easily been updated to reflect accurate patent information if Progressive or Union Lucky so desired.

30.     It was a false statement for Defendants to mark the Falsely Marked Product with an

expired or otherwise inapplicable patent.

31.    Defendants knew that '813 Patent Marking was false, but nevertheless placed the false marking on the tag in an attempt to deceive the public and to discourage competition.

32.    It was a false statement for Defendants to mark the Falsely Marked Product with fictional patent-like markings which resemble extraterritorial patents.  Defendants knew that these patent-like markings were inaccurate or otherwise fictional, but nevertheless marked them on the tag and on the handle of the Falsely Marked Product in an attempt to deceive the public and to discourage competition.

33.    It was a false statement for Defendants to mark the Falsely Marked Product with the words "World Wide Patent UK 2,334,939.  Defendants knew that a "World Wide Patent" did not and does not exist, but nevertheless marked it on their product in an attempt to deceive the public.

34.    Defendants are large, sophisticated companies. Defendants have, and/or regularly retain, sophisticated legal counsel.  Defendants have many years of experience applying for patents, obtaining patents, licensing patents, and/or litigating in patent infringement lawsuits.   For example, Progressive is assignee to two hundred twenty  ("220")  patents according to the United States Patent and Trademark Office and the European Patent Office.   The patents that Defendants own or have licensed, were or are important assets to Defendants and are consistently reviewed and monitored in the course of Defendants' business.

35.    Defendants knew that a patent that is expired does not cover any product at the time the Falsely Marked Product was marked.

36.    Defendants knew that a "World Wide Patent" does not exist at the time each marked and/or advertised the Falsely Marked Product.

37.     Defendants knew that it was a false statement to mark or advertise the Falsely Marked Product with an expired or otherwise inapplicable patent at the time each marked and/or advertised the Falsely Marked Product.

38.     Defendants knew that it was a false statement to mark or advertise the Falsely Marked Products with an alphanumeric sequence to resemble an extraterritorial patent at the time each marked and/or advertised the Falsely Marked Product.

39.     Defendants did not have, and could not have had, a reasonable belief that the Falsely Marked Product was properly marked.

40.     Defendants knew or should have known that the '813 Patent had either expired or was inapplicable at the time each marked and/or advertised the product.

41.     Defendants knew or should have known that the markings for the '939 Patent and the '378 Patent were either inaccurate or fictional due to the two letter country code "UK" which preceded the numerical sequence.

42.     Defendants knew or should have known that the markings for a "World Wide Patent" was inaccurate or fictional because no patent granted by any country grants "World Wide" patent rights.


## INJURY IN FACT TO THE UNITED STATES

43.     Defendants' practice of false marking is injurious to the United States.

44.     The false marking alleged above caused injuries to the sovereignty of the United States arising from Defendants' violations of federal law, specifically, the violation of 35 U.S.C. §292(a). The United States has conferred standing on "any person," which includes Relator, as the United States' assignee of the claims in this complaint to enforce section 292.

45.     The false marking alleged above caused proprietary injuries to the United States, which, together with section 292, would provide another basis to confer standing on Relator as the United States' assignee.

46.     The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

47.     Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain—such as those described in the Expired Patents.

48.     Congress's interest in preventing false marking was so great that it enacted a statute that sought to encourage private parties to enforce the statute. By permitting members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons like Relator to help control false marking.

49.     The acts of false marking alleged above deter innovation and stifle competition in the marketplace for at least the following reasons: if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

50.     The false marking alleged above misleads the public into believing that the '813 Patent, the UK patent numbers, and the notation of a "World Wide Patent" gives Defendants control of

the Falsely Marked Product (as well as like products), placing the risk of determining whether the Falsely Marked Product are controlled by such patents on the public, thereby increasing the cost to the public of ascertaining who, if anyone, in fact controls the intellectual property embodied in the Falsely Marked Product.

51.     Thus, in each instance where a representation is made that the Falsely Marked Product is protected by Patent Markings, a member of the public desiring to participate in the market for products like the Falsely Marked Product must incur the cost of determining whether the involved patents are valid and enforceable.   Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

52.     The false marking alleged in this case also creates a misleading impression that the Falsely Marked Product is technologically superior to other available products, as articles bearing the indicia of several "patents" may be presumed to be novel, useful, and innovative.

53.     Every person or company in the United States is a potential entrepreneur with respect to the process, machine, manufacture, or composition of matter described in the Expired Patents. Moreover, every person or company in the United States is a potential competitor with respect to the Falsely Marked Product marked with the Expired Patents.

54.     Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Patent Markings, is likely to, or at least has the potential to, discourage or deter each person or company (itself or by its representatives), which views such marking from commercializing a competing product, even though the Patent Markings nothing to prevent any

person or company in the United States from competing in commercializing such products.

55.     The false marking alleged in this case and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

56.     The false marking alleged in this case constitutes wrongful and illegal advertisement of a patent monopoly that does not exists and, as a result, has resulted in increasing, or at least maintaining, the market power or commercial success with respect to the Falsely Marked Products.

57.     Each individual false marking (including each time an advertisement with such marking is accessed on the Internet) is likely to harm, or at least potentially harms, the public.  Thus, the false marking of each article is a separate offense under 35 U.S.C. §292(a).

58.     Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. §292(b).

59.     For at least the reasons stated in paragraphs 2 to 46 above, the false marking alleged in this case caused injuries to the sovereignty of the United States arising from violations of federal law and has caused proprietary injuries to the United States.

## CLAIM

60.      For the reasons stated in paragraphs 2 to 47 above, Defendants have violated section 292 of the Patent Act by falsely marking the Falsely Marked Product with intent to deceive the public.

## PRAYER FOR RELIEF

61.     Relator thus requests this Court, pursuant to 35 U.S.C. §292, do the following:

    A.     enter a judgment against Defendants and in favor of Relator that

Defendants have violated 35 U.S.C. §292 by falsely marking products with knowledge that the patents have expired and/or are not applicable for the purpose of deceiving the public;

B.      order Defendants to pay a civil monetary fine of $500 per unit falsely marked, or an alternative reasonable amount determined by the Court taking into consideration the total revenue and gross profit derived from the sale of falsely marked products and the degree of intent to falsely mark the products, one-half of which shall be paid to the United States of America and the other half to Relator;

C.      enter a judgment declaring that this case is "exceptional," under 35 U.S.C. §285 and award in favor of Relator, and against Defendants, the costs incurred by Relator in bringing and maintaining this action, including reasonable attorneys' fees; order that Defendants, their officers, agents, servants, employees, contractors, suppliers, and attorneys be enjoined from committing new acts of false patent marking and be required to cease all existing acts of false patent marking within 90 days;  and

D.      grant Relator such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

62.    Relator demands a jury trial on all issues so triable.


Dated: 4/1/2011

ORIGINAL COMPLAINT

Respectfully submitted,

Cowan Law Firm, PLLC

/s/ <u>M. Cody Cowan</u>
M. Cody Cowan
Texas Bar No. 24038838
2012 Anthony Drive
Tyler, Texas 75701
Tel: (903) 939-8322
Fax: (903) 939-1022
*Attorney for Plaintiff*

ORIGINAL COMPLAINT